**Danny Harris JENKINS,**
**Plaintiff–Appellant,**

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation licensed to do business in the State of Hawai'i, Defendant–Appellee.**

No. 94–16046.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1996.

Decided Sept. 5, 1996.

Shelby A. Floyd, Alston, Hunt, Floyd & Ing, Honolulu, HI, for defendant-appellee.

Before: FLETCHER, D.W. NELSON, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Danny Harris Jenkins appeals pro se the district court judgment against him in his suit against Commonwealth Land Title Insurance Company involving a dispute over a title insurance policy. The district court dismissed Jenkins' various claims, some on summary judgment, others under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction over the appeal under 28 U.S.C. § 1291 and affirm in part and reverse in part.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

In 1981, Jenkins paid $10,000 for Oahu Tax Map Key Parcel 5-3-4:29 ("Parcel 29"), a portion of a 40-foot-wide former railroad right-of-way that was conveyed to him by a quitclaim deed. A month after the purchase, Commonwealth, through its Hawai'ian agent, issued a title insurance policy covering Jenkins' fee-simple ownership of Parcel 29 and insuring Jenkins against loss or damage up to $10,000.[1]

Jenkins wrote Commonwealth in November 1985 and made a formal claim under the policy. He restated and enclosed a recent title report by Hawai'i Escrow & Title, Inc. that showed various potential claims casting doubt on the chain of title to Jenkins' seller. Jenkins claimed they rendered his title unmarketable and requested that Commonwealth take legal action to quiet title to the

Danny H. Jenkins, Honolulu, HI, Pro Se, for plaintiff-appellant.

1. Further details about the purchase emerged in Jenkins' argument before the district court: "The person who was actually paying for the property was a corporation, which didn't wish its ownership of the property to be known. I agreed to take the property in my name as holder of the title. And then at some point I was to release that title into that corporate name." Jenkins further stated that he had conveyed his title in Parcel 29 to the corporation that in 1981 had actually paid for the land. A deed reflecting that transfer was recorded in February 1994 but does not appear in the record in this case. The transfer apparently required that Jenkins attempt to resolve the dispute with Commonwealth, but the sale apparently was not conditional.

parcel in his name. In response, Commonwealth's senior claims counsel wrote Jenkins to inquire whether any adverse claims were then pending as to Parcel 29. If not, the letter stated the company would "prefer to take no action" because "all an action at this time would do is give parties named a belief that they may have an interest" and it would be "best not to open a potential 'can of worms'". The letter also stated that if there were claims pending against Parcel 29, Jenkins should inform Commonwealth immediately so that it could evaluate the claims; "[d]epending upon the nature of the claims made ... [Commonwealth would] consider paying [Jenkins] the policy limits of $10,000 as a means of settlement". Commonwealth's records do not indicate that Jenkins ever responded to this letter, and Jenkins does not claim that he did so.

Jenkins next wrote Commonwealth in February 1992, demanding written notice within one week of Commonwealth's intent to file immediately a suit to quiet title; if Jenkins did not receive such notice by his deadline, he would, he wrote, file a complaint the following day. Jenkins did not state that anyone was making a claim against his title to Parcel 29. Commonwealth apparently wrote Jenkins within a week of his letter and stated that it would investigate "whether ... it had any liability" under the policy and inform Jenkins as to its decision.

In April 1993, Jenkins, acting pro se, filed a complaint in state court, alleging breach of contract, deceptive trade practices, fraud, and negligent misrepresentation and seeking punitive damages and specific performance. Commonwealth offered to pay Jenkins the $10,000 policy limit and Jenkins refused; the company then removed the case to federal court on the basis of diversity. The district court granted summary judgment to Commonwealth on Jenkins' claims for breach of contract, punitive damages, specific performance, negligent misrepresentation, and fraud and dismissed, for failure to state a claim, Jenkins' claim of deceptive trade practices. Jenkins timely appealed, appealing all but the ruling on the claim for breach of contract.

## JURISDICTION

■ Commonwealth removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. The district court denied Jenkins' motion to remand and granted Commonwealth leave to amend its notice of removal, which Commonwealth did. On appeal, Jenkins challenges the district court's determination that it had diversity jurisdiction over this case. The existence of subject-matter jurisdiction is reviewed *de novo*. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir.1995).

Jenkins' challenges to diversity jurisdiction over this action are without merit. Whatever formal errors of pleading Commonwealth made in its notice of removal, it remedied these in its amended notice, in which it stated that Commonwealth "is a corporation incorporated under the laws of the state of Pennsylvania, whose principal place of business was and is the state of Pennsylvania". Whatever formal defect existed by virtue of Commonwealth's statement in its notice of removal that Jenkins is a "resident" of Hawai'i rather than a citizen was similarly cured by the amendment, and by Jenkins' concession that he is a citizen of Hawai'i. The amended pleadings therefore establish that Jenkins and Commonwealth are citizens of different states, so diversity jurisdiction exists over this case under 28 U.S.C. § 1332.

## DISCUSSION

### I. Extension of Time for Filing of Commonwealth's Answer

■ Before reaching the merits of the issues on appeal, we must resolve a procedural issue. Jenkins challenges the district court's grant of Commonwealth's motion to extend the time for the filing of its answer. The complaint was served on Commonwealth on June 17, 1993. Commonwealth moved in state court on July 7, prior to the expiration of the twenty-day period in which its answer was due, for a fourteen-day extension. A hearing on Commonwealth's motion was scheduled for July 21. On July 16, however, Commonwealth filed its notice of removal; on August 6 it renewed in federal court its

state-court motion for an extension of time, which the district court eventually granted.

■ Rule 6(b) commits to the district court's discretion the decision to enlarge the time in which a party must perform an act required or allowed by the Federal Rules of Civil Procedure, so this court reviews such decisions for an abuse of discretion. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 930 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 185, 130 L.Ed.2d 119 (1994).

■ Commonwealth's initial request for an extension was filed in state court before the deadline for the filing of its answer expired, Haw. R. Civ. P. 12(a), and the state court had discretion to grant the extension "for cause shown", Haw. R. Civ. P. 6(b)(1). While the request was pending, Commonwealth removed the case to federal court. The longstanding principle is that "[a]fter removal, the federal court 'takes the case up where the State court left it off' ", *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70*, 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812, 25 L.Ed. 875 (1880)). *See also Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir.1963); *Savell v. Southern Ry. Co.*, 93 F.2d 377, 379 (5th Cir.1937) ("When a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court"). Therefore Commonwealth's request for an extension in state court before the state deadline for Commonwealth's answer had passed was properly treated, upon removal, as a pending motion filed before the deadline for Commonwealth's answer in federal court. Thus, because Commonwealth's request for an extension of the period in which to file its answer to Jenkins' complaint was "made before the expiration of the period originally prescribed" for the filing, the district court had the discretion to extend the deadline "for cause shown". Fed.R.Civ.P. 6(b)(1).

The district court did not abuse its discretion in enlarging the time for the filing of Commonwealth's answer "for cause shown" under Rule 6(b)(1). Commonwealth's attorney submitted declarations indicating (1) that she had requested that Jenkins' stipulate to an extension but that he had refused, (2) that she was lead counsel for Commonwealth in a 21–party case in state court which was set for trial on August 24 and which had a strict discovery deadline of July 23 that required her to be in Kona for depositions and motions, and (3) that she therefore had not had an opportunity to discuss the complaint with Commonwealth and to review its files on the matter. On these facts, the district court's enlargement of the time for the filing of Commonwealth's answer was not an abuse of discretion.

## II. Jenkins' Claims

We conclude that the district court did not err in granting summary judgment on the claim for negligent misrepresentation, nor did it err in dismissing the fraud claim on the pleadings and in denying specific performance and punitive damages. However, we disagree with the district court's basis for dismissing on the pleadings the deceptive-practices claim and conclude that claim must be remanded to the district court for further proceedings.

### A. Negligent Misrepresentation

■ Jenkins appeals the district court's grant of summary judgment to Commonwealth (and denial of his motion for summary judgment in his favor) on his claim of negligent misrepresentation. A grant of summary judgment is reviewed *de novo*. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

■ Even if we assume that Jenkins raised a genuine issue of material fact as to whether Commonwealth represented to him that the title to Parcel 29 was marketable and free of any liens and defects other than those set forth in the insurance policy, summary judgment for Commonwealth was proper. The Hawai'i cause of action for negligent misrepresentation requires that Jenkins suffer damages. *Chun v. Park*, 51 Haw. 462, 462 P.2d 905, 909 (1969). He has come forth with no evidence to create a factual issue over whether he was damaged in purchasing Parcel 29 with a title that was otherwise than allegedly represented. Jenkins' failure to

raise a genuine issue as to damage entitled Commonwealth to summary judgment.

■ Jenkins has also not raised a genuine issue of material fact as to any of his other allegations that Commonwealth negligently misrepresented its intentions (1) to fulfill its obligations under the policy, (2) to quiet title in Parcel 29, and (3) to investigate his claim. While Jenkins believes that Commonwealth had an obligation to quiet title to Parcel 29, the policy, as interpreted by the district court in a ruling not challenged by Jenkins, did not impose such an obligation on Commonwealth. Furthermore, Jenkins has offered no evidence beyond his mere allegation to prove that Commonwealth ever represented to him, subsequent to the issuance of the policy, that it would quiet title to the parcel. Commonwealth's letter of April 28, 1977 cannot be read to make such a representation. On summary judgment, of course, Jenkins cannot rest on mere allegations. *United States v. Allen,* 578 F.2d 236, 237 (9th Cir.1978). Finally, Jenkins can hardly complain about Commonwealth's alleged failure to investigate his claim when he failed to respond to its request that he identify any claims being made adverse to his title.

## B. Fraud

■ Jenkins appeals the district court's decision dismissing his fraud claim for failing to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) in that "it states neither the time, place nor specific nature of the fraudulent representations". A dismissal for failure to state a claim is reviewed *de novo. Stone v. Travelers Corp.,* 58 F.3d 434, 436–37 (9th Cir.1995).

■ On appeal, the only argument Jenkins makes is that he should have been granted leave to amend the fraud count of his complaint rather than having that count dismissed. Even if Jenkins were allowed to amend his complaint, however, he could not properly allege a claim for fraud. His basic allegation is that Commonwealth sold him

the title insurance policy covering Parcel 29 "and represented thereby that it would faithfully perform its obligations pursuant to the terms of said policy ... when in fact [Commonwealth] never intended to perform its obligations" under the policy. The district court, however, in its unchallenged decision on Jenkins' breach-of-contract claim, ruled that Commonwealth had not breached its contract with Jenkins because it had fulfilled its obligations under the policy. Thus, the alleged representation is not false, and therefore not fraudulent. *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Securities Litigation),* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc) ("The statement in question must be false to be fraudulent."). Therefore, even if Jenkins had sought leave to amend, the district court could have refused to grant such leave, even given the strict review of such denials in light of the strong policy in favor of amendment. *See, e.g., Thomas–Lazear v. Federal Bureau of Investigation,* 851 F.2d 1202, 1206 (9th Cir.1988).

## C. Deceptive Trade Practices

■ Jenkins appeals the district court's dismissal of his claim that Commonwealth violated § 480–2 [2] of Hawai'i Revised Statutes, which declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful". The district court dismissed this statutory claim as precluded by certain provisions of the Hawai'i Insurance Code that provide only administrative remedies. A dismissal for failure to state a claim is reviewed *de novo, Stone,* 58 F.3d at 436–37, as is a district court's interpretation of state law, *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *National Union Fire Insurance Co. v. Showa Shipping Co.,* 47 F.3d 316, 322 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim

---

**2.** Before 1987, § 480–2 consisted of a single sentence barring unfair methods of competition and unfair or deceptive acts or practices in business. In 1987, the section was amended, with the original sentence retained and designated as

§ 480–2(a), and three new subsections added. For the sake of simplicity, throughout this opinion we refer to the basic unfair-competition provision of Hawai'i law as " § 480–2".

that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We conclude the district court erred in finding § 480–2 preempted, so we must remand to allow the district court to consider whether Jenkins has stated a claim under any possible set of facts.

The court dismissed the claim because *Genovia v. Jackson National Life Insurance Co.*, 795 F.Supp. 1036 (D.Haw.1992), held that § 480–2 does not apply to insurers. *Genovia* interpreted § 431:1–104 of the Hawai'i Insurance Code to preempt application of the general unfair-competition law in § 480–2 to insurers. 795 F.Supp. at 1045. Section 431:1–104 provides that "[p]rovisions of this code relating to a ... particular matter prevail over provisions relating to ... such matter in general". Section 431:13–102 of the Insurance Code prohibits engaging "in any trade practice which is defined in [Article 13 of the Insurance Code] as ... an unfair method of competition or an unfair or deceptive act or practice in the business of insurance". Article 13 includes six pages defining unfair methods of competition and unfair or deceptive acts or practices.

Were we writing on a clean slate, we might well accept as sound the conclusion of *Genovia* that the unfair-competition provisions of the Insurance Code preempt the state's more general unfair-competition statute, § 480–2. Both sections use exactly the same terms (albeit one in the singular and the other in the plural) to describe what is prohibited: any "unfair method of competition" and any "unfair or deceptive act or practice". While the Insurance Code defines those terms in

the insurance context in enormous detail, § 480–2 (and the chapter in which it occurs) offers no definition of those terms.[3] In addition, § 431:13–101 states the purpose of Article 13 of the Insurance Code to be "defining, or providing for the determination of, [and prohibiting] *all* acts, methods, and practices which constitute unfair methods of competition or unfair or deceptive acts or practices" in the insurance industry.[4] Haw.Rev.Stat. § 431:13–101 (emphasis added).

*Genovia*'s conclusion on preemption, however, may be implicitly inconsistent with the treatment of § 480–2 in *Gonsalves v. First Insurance Co. of Hawaii, Ltd.*, 55 Haw. 155, 516 P.2d 720 (1973). The plaintiffs in that case sued an insurance company seeking treble damages for violation of § 480–2.[5] *Id.*, 516 P.2d at 722. The plaintiffs argued that "the [insurance] policy and the endorsement [in question] are drafted in such a complex and vague manner as to be misleading and deceptive". *Id.*, 516 P.2d at 724. The Hawai'i Supreme Court affirmed the trial court's grant of summary judgment to the defendant insurance company on the merits: "Defendant's policy, including the endorsement, is somewhat complex, but is neither vague nor misleading. Complexity, without more, does not make a document deceptive." *Id.*, 516 P.2d at 725. It is true that no preemption argument appears to have been urged, but the court gave absolutely no indication that the plaintiffs had failed to state a claim because § 480–2 was preempted by the insurance code, despite the fact that the 1973 version of the insurance code contained both a "particular provisions prevail" section[6] and

---

**3.** Section 480–2(b), added in 1987, offers some guidance on the definitions by providing that courts and agencies construing § 480–2 "shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))".

**4.** Jenkins would not be entitled to bring a private action against Commonwealth under § 431:13–102. *Genovia* held that the statute was intended as a regulatory one, enforceable by the insurance commissioner, and not one authorizing private remedies to aggrieved individuals. 795 F.Supp. at 1044–45. This aspect of *Genovia* was recently confirmed by the Hawai'i Supreme Court in *The*

*Best Place, Inc. v. Penn America Insurance Co.*, 82 Hawaii 120, 126, 920 P.2d 334, 340 (1996) ("Article 13 of the Hawai'i Insurance Code does not authorize a private cause of action pursuant to its administrative remedies.").

**5.** In 1973, § 480–2 was identical to the current version of § 480–2(a).

**6.** This section provides as follows:

**Particular provisions prevail.** Provisions of this chapter relating to a particular class of insurance or a particular type of insurer or to a particular matter prevail over provisions relating to insurance in general or insurers in general or to such matter in general.

specific provisions on unfair competition and deceptive trade practices.[7] *Gonsalves* thus suggests that the *Genovia* court erred in ruling that the insurance code's unfair-competition provisions preempt the general unfair-competition provisions in § 480–2.[8]

This suggestion is supported by the opinion of the Supreme Court of Hawai'i in the recently decided case *The Best Place, Inc. v. Penn America Insurance Co.*, 82 Hawaii 120, 920 P.2d 334 (1996). In that case, the court recognized a tort cause of action for bad-faith refusal to pay a valid claim submitted by an insured under an insurance policy. The insurer in that case argued that no such claim should be recognized because the administrative remedies provided in the unfair-competition section of the Hawai'i Insurance Code, Article 13, were adequate and no additional remedies were necessary. The court rejected that argument and held that Article 13 did not preempt a private cause of action for tortious bad faith. In doing so, the court addressed the preemptive effect of Article 13 generally:

> The existing administrative remedies, however, are not exclusive. Indeed, HRS § 431:13–202(b) (1993) provides that "[n]o order of the Commissioner pursuant to this section or order of court to enforce it shall in any way relieve or absolve any person affected by the order from any other liability, penalty, or forfeiture required by law." This provision clarifies any question as to Article 13's preemptive effect. In addition, we glean from the legislative history of HRS § 413:13–202(b) that the legislature deemed the existing administrative remedies inadequate.

*Id.*, 920 P.2d at 341. Of course, the opinion in *Best Place* does not directly resolve the preemption question presented in the case before us, since *Best Place* addressed whether Article 13 preempted a common-law claim and the instant case turns on whether Article 13 preempts another provision of the Hawai'i Revised Statutes. Nonetheless, the *Best Place* discussion of Article 13's preemptive effect, together with the decision in *Gon-*

---

Haw.Rev.Stat. § 431–19 (1976). This provision is identical to its counterpart in the current version (which was in force when *Genovia* was decided), except that the latter uses the term "code" in place of "chapter". Haw.Rev.Stat. § 431:1–104 (1994).

**7.** Article 13 of the current code (which was in force at the time *Genovia* was decided) corresponds generally to §§ 431–641 to 431–647 of the code in force in 1973 (when *Gonsalves* was decided). Haw.Rev.Stat. §§ 431–641 to 431–647 (1976). Those sections included a prohibition on any "unfair method of competition" or "unfair or deceptive act or practice", § 431–642, and three pages of definitions of what constituted such a method or practice, § 431–643.

**8.** Although *Gonsalves* never mentions the preemption question or the "particular provisions prevail" section of the insurance code, it is possible to reconcile the decision with that section. The precise language of that section states that "[p]rovisions of this code relating to a particular class of insurance or a particular type of insurer or to a particular matter prevail over provisions relating to insurance in general or insurers in general or to such matter in general". Haw.Rev. Stat. § 431:1–104. This section can be read to mean only that provisions of the insurance code that relate to a particular subject prevail over *other provisions of the insurance code,* and not over provisions of all other Hawai'i statutes, that relate to the subject in general. Thus, for example, any provision of Article 20 of the Insurance

Code on "Title Insurance and Title Insurers", §§ 431:20–101 to 431:20–125, would prevail over any more general terms elsewhere in the Insurance Code.

We have found no other decision interpreting § 431:1–104, nor any decision interpreting a similar section elsewhere in the Hawai'i statutes. *See* Haw.Rev.Stat. § 412:1–107 ("Provisions of this chapter relating to a particular class of financial institutions or a particular matter shall prevail over provisions relating to financial institutions in general or to such matter in general."). At least 21 other states have similar or identical provisions in their insurance codes, and of the decisions we have found interpreting those provisions, three cases applied the provisions to allow specific insurance-code provisions to preempt more general provisions elsewhere in the insurance code, while two cases involved preemption of state statutes outside the insurance code. *Arkansas–Oklahoma Gas Corp. v. Lukis Stewart Price Forbes & Co. Ltd.*, 306 Ark. 425, 816 S.W.2d 571, 574–75 (1991) (conflict within insurance code); *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 748 P.2d 392, 398 (1987) (same); *National Union Fire Ins. Co. v. Robuck,* 203 So.2d 204, 207 (Fla.Dist.Ct.App.1967) (same), *cert. denied,* 209 So.2d 672 (Fla.1968), *and cert. denied,* 212 So.2d 869 (Fla.1968); *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 464 A.2d 1068, 1075–76 (1983) (conflict with provision outside insurance code); *Snead Constr. Corp. v. Langerman,* 369 So.2d 591, 594–595 (Fla.Dist.Ct. App.1978).

*salves*, convinces us that the Supreme Court of Hawai'i would not find that Article 13 preempts suits against insurers for deceptive trade practices in violation of § 480–2.

■ The unfair-competition count of Jenkins' complaint alleged, *inter alia*, that Commonwealth, in issuing the insurance policy, "[led] him to believe that he was acquiring good and marketable title to the insured property" and that in response to his claims Commonwealth initiated efforts to quiet title to the property, abandoned those efforts, and refused to disclose fully to him the status of his claims under the policy. Taking the allegations of the complaint as true, as we must on a motion to dismiss for failure to state a claim, we conclude that Jenkins has stated a claim for deceptive trade practices and the district court's dismissal was in error.

Section 480–13 of the Hawai'i Revised Statutes, the section that allows Jenkins to sue for a violation of § 480–2, requires that a plaintiff have sustained damages. "[T]he mere existence of a violation is not sufficient *ipso facto* to support the action; forbidden acts cannot be relevant unless they cause private damage." *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304, 1312 (1980). Jenkins' allegation that he has, as a "direct and proximate result" of Commonwealth's violation, "sustained special and general damages" suffices to withstand a motion to dismiss under Rule 12(b)(6). We note, however, that representations made to the district court and to this court appear to suggest that Jenkins' arrangement with the actual purchasers of the parcel has been concluded as originally anticipated, and he was able, despite any alleged clouds on the title, to unconditionally convey the parcel to that purchaser in a recorded deed. On remand, the district court will have to determine whether Jenkins can establish the damages that are an essential element of his unfair-competition claim. *See Ai*, 607 P.2d at 1311.

## CONCLUSION

Because we conclude that the Hawai'i Supreme Court would not read Article 13 of the Hawai'i Insurance Code as preempting private actions under the general unfair-competition law of Hawai'i, we reverse the district court's dismissal of Jenkins' claim for deceptive trade practices and remand for further proceedings. We affirm the district court's ruling in all other respects. Each party is to bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART.**