Filed 1/12/16  Pack v. Hoge Fenton Jones & Appel, Inc. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT PACK,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HOGE FENTON JONES & APPEL, INC., et al.,<br><br>        Defendants and Respondents. | A139558<br><br>(Alameda County<br>Super. Ct. No. RG 11 556084) |

On the eve of trial, plaintiff Robert Pack was under a court order to produce his expert witnesses for deposition.  Expert testimony was crucial to plaintiff's case, a legal malpractice action against his former attorneys.  Plaintiff cancelled the depositions, in violation of the court's order, and removed the case to federal district court in an act characterized by the district court as "a paradigmatic example of objectively unreasonable removal" that "squandered valuable resources—[the federal] Court's, the state court's, and Defendants'."  Upon remand, the trial court issued evidentiary sanctions against the plaintiff for discovery abuse, precluding plaintiff from introducing testimony from his designated experts.

The case eventually went to trial.  After plaintiff made his opening statement, and conceded that he had no experts to testify as to the standard of care for federal securities litigation, the trial court granted defendants' motion for nonsuit, ruling that plaintiff could not prove required elements of his case, including breach of the standard of care.

1

After the nonsuit was granted, plaintiff obtained new counsel and moved for a new trial. He submitted evidence of trial counsel's misconduct and argued that the misconduct constituted an irregularity in the proceedings that justified a new trial. The trial court denied the motion, ruling that the conduct of which plaintiff complained was "indistinguishable from professional negligence" and that "[e]vidence of incompetence by Plaintiff's own counsel in a civil proceeding is not a basis to grant a new trial based on irregularity in the proceedings."

In this appeal, plaintiff contends that the trial court erred in granting defendants' motion for evidentiary sanctions and in denying plaintiff's motion for a new trial. Finding no error, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, plaintiff Robert Pack (Pack), represented by two attorneys including Russell A. Robinson (Robinson), filed an action for legal malpractice and breach of fiduciary duty against his former attorneys: Hoge Fenton Jones and Appel, Inc., Sblend Sblendorio, and Paul Breen (collectively Hoge Fenton).[1] The underlying action that formed the basis for Pack's malpractice claim was a federal securities case entitled *Pack v. McCausland* (underlying action). As we will see, attorney Robinson is at the center of this appeal.[2]

1.    *Hoge Fenton Attempts to Schedule Expert Depositions*

With a September 4, 2012, trial date fast approaching, Pack and Hoge Fenton exchanged expert witness disclosures on July 16. Pack disclosed five experts, including retained expert Carol Langford (Langford), who was designated to testify on topics including "the standard of care." Hoge Fenton noticed the depositions of Pack's experts for late July and early August. Pack did not object to the notice.

---

[1] Pack also named Samuel Goldstein as a defendant. Pack subsequently settled with Goldstein, who is not a party here.

[2] Robinson is listed as one of the attorneys of record on the original complaint, although he apparently did not take over full responsibility for the case until about March 2012.

2

The depositions never took place. Five days before the first deposition, Robinson left a voicemail and sent an email to Hoge Fenton's counsel cancelling the depositions "in view of the [trial court's tentative] ruling [denying Hoge Fenton's motion for summary judgment] and other factors." Hoge Fenton sought to reschedule the depositions but Pack refused.

Hoge Fenton then filed a motion to compel Pack to produce his experts for deposition during the last week in August. In his response to the motion, Pack relented and agreed to produce his experts: "Plaintiff, after further reflection and review, does not oppose the motion provided the depositions take place the week of August 27, 2012 (except August 28, 2012), at mutually convenient dates and times." Notwithstanding Pack's apparent change of heart, the trial court granted the motion on Friday, August 24, and directed the parties to meet and confer to schedule the depositions as Pack had offered. Robinson sent an email about a proposed schedule that afternoon, and Hoge Fenton's counsel replied within two hours with a proposal for depositions to be taken on August 29, 30 and 31. On Monday, August 27, Hoge Fenton's counsel emailed Robinson seeking to confirm the proposed deposition schedule. Two days later, on August 29, just hours before the first deposition was to begin, Robinson sent a terse email to Hoge Fenton's counsel: "Please note that there will be no depositions this week. Thank you."

2.     *Pack Removes the Case to Federal Court on the Eve of Trial*

Meanwhile, and apparently without any advance warning to Hoge Fenton, Pack filed a notice of removal in the federal district court on August 28, the day before the first deposition of Pack's expert was scheduled and just four court days before trial. On August 29, Pack filed a separate notice of removal in the superior court. This, of course, was the same day that Pack cancelled the expert depositions. Not only did the cancellation violate the trial court's August 24 order to produce the experts for deposition; in his notice of removal, Pack acknowledged that "[a]ll existing orders, including rulings on discovery . . . remain in effect until modified by the federal court."

In a written order filed December 10, 2012, the federal district court criticized Pack's attempt to remove the case and remanded the case to the superior court. The

3

district judge wrote that "a desultory consultation of the applicable statutes would have revealed to Mr. Pack and his counsel that, as a plaintiff, he was not permitted to remove." The removal was "objectively unreasonable," and "squandered valuable resources—this Court's, the state court's, and Defendants'." The district court subsequently ordered Pack to pay $5,000 for Hoge Fenton's attorney's fees.[3]

3.        *The Trial Court Issues Evidentiary Sanctions Against Pack*

On January 30, 2013, after remand to the superior court, the trial judge told the parties at trial setting that the case was to "pick up right where we left off with where the discovery was—there was already a discovery cut off, so neither side, you know, should be in a better or worse position than where you were on August whatever—28th."

Hoge Fenton then filed a motion under Code of Civil Procedure sections 2023.010, 2023.030, 2025.420 and 2025.450,[4] seeking evidentiary sanctions to exclude testimony from Pack's retained and non-retained experts, on the theory that preclusion was necessary to prevent Pack from benefiting from cancelling the court-ordered and scheduled depositions on the eve of trial. Pack opposed the motion, contending that excluding his experts would have him "sanctioned twice for the same conduct," because the district court had already required Pack to pay $5,000 in defendants' attorney fees for improperly removing the case to federal court.

The trial court granted Defendants' motion after a hearing, finding that Hoge Fenton had "made a persuasive showing that [Pack] removed this case to federal court solely for tactical reasons, and that [Pack] was not prepared to produce his experts for deposition the week of August 27, 2012, as [he] agreed, and as ordered by the court."

---

[3] At the same time he removed this case, Pack had also filed a new case in federal court, which, as the district court noted, "involves many of the claims previously asserted in the state court action." Although Pack voluntarily dismissed the new federal complaint, the district court imposed rule 11 sanctions (Fed. Rules Civ. Proc., rule 11, 28 U.S.C.) against Pack and Robinson, finding that the new complaint "was filed for an improper purpose," specifically to "avoid[] the state court's adverse rulings through forum shopping," and that the claims asserted in the new complaint were frivolous.

[4] All further statutory references are the Code of Civil Procedure.

4

The trial court wrote: "The federal court found that [Pack's] removal of the case to federal district court was frivolous. . . . Further, the removal did not affect the court's previously issued orders, or excuse [Pack's] failure to produce his experts for deposition. . . . [¶] The court concludes that [Pack] intentionally violated the court's order and breached his agreement to provide his experts for deposition, and that Hoge Fenton was substantially prejudiced by the expense of preparing for those depositions and responding to [Pack]'s frivolous removal to federal court. . . . For that reason, the evidentiary sanctions sought by Hoge Fenton are justified C.C.P. sec. 2025.450(h)[5] . . . . [¶] To the extent the court has discretion, that discretion will not be exercised to allow [Pack] to benefit from his improper removal of this case to federal court. [Pack's] gamesmanship caused a significant waste of the resources of Hoge Fenton, which was prepared to take the depositions and proceed to trial, and also caused an unjustified waste of the court's public resources."

The trial court emphasized at the hearing that its order precluding Pack's experts was not a sanction for the improper removal to federal court, but was rather a response to Pack's failure to comply with the court's prior order setting a deadline for expert depositions. As the trial court explained, "I am sanctioning the Plaintiff, Mr. Robinson. Evidentiary sanctions. But not directly because of the removal. That—what the federal court did is different. [¶] I'm sanctioning evidentiary—I'm imposing evidentiary sanctions for the failure to comply with my order on completing the depositions within a specific amount of time."

4.      *The Trial Court Grants Hoge Fenton's Motion for Nonsuit*

The bench trial began. After Pack's opening statement, Hoge Fenton moved for nonsuit under section 581c, arguing that Pack would not be able to prove his claims because he had no expert to testify as to the standard of care for handling a federal

---

[5] Section 2025.450, subdivision (h) provides that if a "party . . . fails to obey an order compelling attendance, testimony, and production [at deposition], the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction . . . ."

5

securities action, nor could he prove that he would have won the underlying case absent Hoge Fenton's alleged malpractice. Pack acknowledged that he had no such experts, and the trial court allowed him to augment his opening statement. The trial court then granted Defendants' nonsuit motion, ruling that Pack could not prove his case because he could not prove "the essential element of standard of care and breach of standard of care and causation."

5.  *The Trial Court Denies Pack's Motion for a New Trial*

Shortly thereafter, Pack, represented by new counsel, David H. Schwartz (Schwartz), moved for a new trial under section 657 on several grounds, only one of which is raised on appeal. Pack argued that a pattern of "fraud and deceit" by his former attorney Robinson constituted an irregularity in the proceedings that justified a new trial under section 657, subdivision (1). In support of this argument, Pack offered evidence that Robinson failed to obtain an expert to testify as to the standard of care for handling a federal securities action; misled Pack about that failure; and gave Pack incorrect advice about the effects of removing the case to federal court.[6]

---

[6] The evidence included a declaration from Langford, who Pack had designated to testify as to the standard of care. Langford stated that her role was to testify only as an expert regarding Hoge Fenton's failure to adhere to the California Rules of Professional Responsibility, and not the standard of care. In July 2012 she discussed with Pack and Robinson "the need for an expert as to the standard of care for handling a federal securities action and issues of proximate cause," asked Robinson who that expert would be, and Robinson responded "that he had not yet located an expert for those subjects."

Pack also submitted his own declaration, stating that after the discussion with Langford, Robinson reported that he had identified Steven P. Gordon (Gordon) as an expert to testify about the standard of care and proximate cause. Pack saw Gordon's name on the witness list that was served and filed in mid-August 2012, and assumed that Gordon was his expert for the standard of care and proximate cause. It was not until spring 2013 that Pack saw the July 16, 2012 expert disclosure, which identified Langford as an expert on the standard of care and which made no mention of Gordon.

Pack said that by mid-September 2012, he had became suspicious as to whether Gordon existed. Gordon's email address was a hotmail account and, despite being asked, Robinson never gave him Gordon's CV or a copy of the agreement between Gordon and Robinson. Nor would Robinson tell Pack the name or location of Gordon's firm, beyond

6

The trial court denied the new trial motion after a hearing.  As to whether there was any "irregularity in the proceedings" within the meaning of section 657, subdivision (1), the court wrote: "[Pack's] evidence shows that his attorney failed to secure an expert witness to testify about the duty of care in securities litigation, that [Pack] relied on him to do so, and that counsel then convinced [Pack] to remove the case to federal court in an attempt to avoid the effect of his failure to secure an expert witness.  Such conduct is indistinguishable from professional negligence.  [Pack's] reliance on his attorney to obtain expert witnesses, and the resulting failure to discover his attorney's alleged omissions until it was too late, does not distinguish this case from other cases involving alleged attorney malpractice."  The court concluded, "Evidence of incompetence by [Pack's] own counsel in a civil proceeding is not a basis to grant a new trial based on irregularity in the proceedings."  Pack is "bound by the actions of his counsel."

This appeal timely followed, challenging the order precluding expert testimony and the denial of the motion for new trial.

## DISCUSSION

A.    *The Trial Court's Order Granting Defendants' Motion for Evidentiary Sanctions*

      1.    *Applicable Law*

The Civil Discovery Act provides that if a party "fails to obey an order compelling attendance, testimony and production [at deposition], the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction." (§ 2025.450, subd. (h).)  An evidence sanction, as its name suggests, is "an order prohibiting any party engaging in the misuse of the discovery

---

saying that he thought Gordon's offices were in San Mateo.  At one point, Pack accused Robinson of "creating a fake expert."  Robinson denied the accusation.

Pack also submitted a declaration from his current attorney, Schwartz, who stated that the State Bar of California Attorney Search page showed no attorney with the name "Stephen Gordon" or "Steven Gordon," and he had been unable to locate any communications with Gordon in the case files that he received from Robinson.  Robinson promised Schwartz he would provide a disk with correspondence and files related to expert witnesses, but he never did.

process from introducing designated matters in evidence." (§ 2023.030, subd. (c).) In contrast, a terminating sanction is an order "striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process" or "staying further proceedings by that party until an order for discovery is obeyed," or "dismissing the action or any part of the action, of that party," or "rendering a judgment by default against that party." (§ 2023.030, subd. (d).)

The trial court has broad discretion to impose sanctions "properly tailored to respond to" the conduct at issue. (*McArthur v. Bockman* (1989) 208 Cal.App.3d 1076, 1081 (*McArthur*).) "Discovery sanctions must be tailored in order to remedy the offending party's discovery abuse, should not give the aggrieved party more than what it is entitled to, and should not be used to punish the offending party." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1217.) We review an order of sanctions for abuse of discretion: "[t]he power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action." (*Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 904.)

2.      *Analysis*

Pack does not dispute that the Code of Civil Procedure authorizes a trial court to issue sanctions for failure to obey an order compelling a witness's attendance at deposition (§ 2025.450, subd. (h)), or that he intentionally disobeyed the trial court's discovery order that required him to produce his experts for deposition, or that his removal of the case to federal court was frivolous, wasteful and a delaying tactic. Rather, he contends that the trial court abused its discretion imposing the sanction in this case of excluding testimony from his experts. Pack advances three arguments. First, the sanctions issued by the trial court were duplicative of the removal sanctions issued by the federal district court and therefore punitive. Second, because he needed expert testimony to prove his case, the sanctions here were effectively terminating sanctions, and therefore disproportionate as a response to "conduct that merely caused delay of the case." Third, the trial court's order imposing sanctions cited authorities that do not support the sanctions that were issued. We address the arguments in turn.

8

### a. *"Duplicative" Sanctions*

Pack contends that the trial court sanctioned him for removing the case to federal court; from that, he concludes that the trial court's sanctions were "duplicative" of the federal court's sanctions and therefore "punitive." Pack's premise is incorrect, and we reject his conclusion.

The federal court ordered Pack to pay Hoge Fenton "$5,000 in attorneys' fees in connection with Mr. Pack's improper removal," pursuant to a federal statute permitting the imposition of "just costs and . . . expenses, including attorney fees, incurred as a result of the removal." (28 U.S.C. § 1447(c).)

The trial court, in contrast, was explicit that it was not sanctioning Pack for the removal, but rather for his intentional violation of the trial court's August 24, 2012, discovery order to produce his experts for deposition during the week of August 27, an order that Pack himself concedes remained in effect even after removal. The notice of removal that Pack's counsel filed in the trial court went so far as to include the following language: "The federal court takes the action as it stood in the state court when removed. All existing orders, including rulings on discovery and extensions of time to plead, remain in effect until modified by the federal court."[7]

This is not to deny that the trial court considered the impact of the removal in determining what sanctions would be appropriate. How could it not? Removal was part of what the trial court characterized as "gamesmanship," because Robinson was not

---

[7] In support of this proposition, Pack cited *Jenkins v. Commonwealth Land Title Insurance Co.* (9th Cir. 1996) 95 F.3d 791, 795 (*Jenkins*). *Jenkins* relied on *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers* (1974) 415 U.S. 423, 436 (*Granny Goose*), which discussed 28 United States Code section 1450—part of the statutory scheme that governs the removal of cases from state court. Section 1450 states, in part, "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." (28 U.S.C. § 1450.) The Supreme Court in *Granny Goose* explained that "the statute [§ 1450] ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal." (*Granny Goose*, *supra*, 415 U.S. at p. 436.) "Congress clearly intended to preserve the effectiveness of state court orders after removal." (*Ibid.*)

prepared to produce his experts for deposition during the week of August 27, as the court had ordered. By filing the notice of removal on August 28, Pack was able to postpone the trial that had been set for September 3, and then convert the postponement of the trial into an opportunity to belatedly produce his experts for deposition. As we discuss below, the sanctions imposed by the trial court were tailored to prevent Pack from reaping the benefit of his failure to timely produce his experts. They were not "duplicative" of the attorney fee award ordered by the federal district court.

b. *"Disproportionate" Sanctions*

Pack seeks to characterize the trial court's sanctions as "terminating" rather than "evidentiary" in an effort to argue that the trial court imposed too harsh a sanction in view of the facts. As part of this argument, he maintains that the trial court issued sanctions because of the removal, when in fact the trial court issued sanctions because Pack violated the trial court's order to produce his experts for deposition, as we discussed above. He also claims that the sanctioned conduct "caused only delay," when the trial court found that Pack's conduct "substantially prejudiced" Hoge Fenton.

To support his characterization of the sanctions as "terminating," Pack contends that the sanctions barred him from introducing testimony to prove essential elements of his claim, specifically, the standard of care, and Hoge Fenton's breach of that standard. But the record indicates that the sanctions order did not itself preclude Pack from proving his case. Even if the trial court had allowed Pack to introduce testimony from his experts, he could not have used their testimony to prove the standard of care for handling federal securities litigation: in connection with its ruling on Pack's motion for a new trial, the court found that it was "undisputed that Plaintiff did not have an expert to testify about the duty of care for federal securities litigation at the time of the September 4, 2012 trial."[8]

_____

[8] Although Pack had previously designated expert Langford to testify on that topic, in support of his motion for a new trial, he submitted a declaration from Langford in which she states that she would not have testified as to the standard of care.

In any event, the cases that Pack cites to support his position that the trial court issued "terminating" sanctions and that the sanctions were disproportionate to his conduct are not helpful to Pack, as we discuss below.

*McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, in which the Court of Appeal vacated a sanctions order, does not support Pack's argument, despite his claims to the contrary. In *McGinty*, the trial court precluded testimony from plaintiff's expert because the expert had forwarded documents to plaintiff's attorney which related to defendant and were subject to a protective order in another case in which the expert had been retained. (*Id.* at p. 207.) The Court of Appeal, however, characterized the facts as a plaintiff's attorney's "inadvertent receipt of documents due to someone else's violation of a court order" (*id.* at p. 213), without prejudice to the defendant, because the documents at issue were discoverable "through normal discovery channels," and in fact the trial court had ordered defendant to produce them long before plaintiff received them. (*Id.* at pp. 213-214.) Here, in contrast, the trial court issued sanctions in response to Pack's willful violation of the trial court's discovery order, a violation that the trial court found substantially prejudiced the defendants, who incurred the "expense of preparing for [the improperly-cancelled expert] depositions and responding to [Pack's] frivolous removal to federal court.

Pack's reliance on *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152 (*Sherman*) is misplaced. *Sherman* was a product liability/negligence action in which plaintiffs appealed a judgment after a jury returned a unanimous defense verdict. (*Id.* at p. 1158.) Just after the verdict, plaintiffs learned that defendant "failed to produce and concealed the existence of crucial documents," and compounded that misconduct by conduct at trial in which defendant "created the false impression its product rarely malfunctioned and then with only . . . inconsequential effects." (*Id.* at p. 1155.) The trial court denied plaintiffs' motion for a new trial, and did not reach the merits of plaintiffs' motion for sanctions, concluding that it could not award them discovery sanctions so late in the proceedings. (*Id.* at p. 1163.) In discussing appropriate sanctions in *Sherman*, the Court of Appeal raised the hypothetical possibility of the trial court sanctioning

11

defendants by entering a default judgment, rather than ordering a new trial. (*Ibid.*) The court rejected that possibility because it would have provided an unfair benefit to the plaintiffs: they would have been "in a better position than if discovery had been obtained in the first place." (*Ibid.*) The Court of Appeal remanded for a new trial, ordered the trial court to impose monetary sanctions to at least cover the costs incurred by plaintiffs in the initial trial, and left it to the trial court's discretion to determine whether additional sanctions should be imposed. (*Id.* at pp. 1163-1164.)

Here, Pack argues that the evidentiary sanctions imposed by the trial court "gave [Hoge Fenton] more than they were entitled to," and cites *Sherman* for the proposition that terminating sanctions are inappropriate remedies for willful discovery misconduct because they would put the aggrieved party in a better position than if discovery had been obtained in the first place. But the facts and procedural posture of *Sherman* differ dramatically from the facts and posture here. The trial court's evidentiary sanctions order here is not analogous to the hypothetical default judgment discussed by the Court of Appeal in *Sherman*. Moreover, the sanctions order here did not provide a benefit to Hoge Fenton: it merely preserved the state of affairs that existed before the removal, thus preventing Pack from receiving an unfair benefit and preventing Hoge Fenton from being further prejudiced. As the trial court explained in denying Pack's motion for a new trial, Pack "would have unfairly benefitted by the bad faith removal of the case to federal court . . . if he had been allowed to provide experts after the case was remanded."

Similarly, *Duggan v. Moss* (1979) 98 Cal.App.3d 735, cited by Pack, is inapplicable. There the court issued an order compelling plaintiff to respond to interrogatories and pay sanctions, and stated that the complaint would be dismissed if plaintiff failed to comply with the order. The Court of Appeal reversed because the Code of Civil Procedure does not authorize a trial court to impose conditional sanctions. (*Id.* at p. 742.) No such conditional order was issued here.

Pack cites *Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 296, for the proposition that terminating sanctions may be an abuse of discretion when a party has failed to comply with discovery requests if the party seeking sanctions

12

does not show that it was prejudiced.  This case does not help Pack for two reasons.  First, the cited portion of the case stands for the proposition that discovery sanctions cannot be awarded ex parte, which is not the issue here.  (*Ibid.*)  Second, the portion of *Parker* to which Pack apparently intends to refer involved a terminating sanction in favor of parties who did not themselves propound discovery or show how they were prejudiced by the conduct at issue.  (*Id.* at pp. 297-298.)  Here, Hoge Fenton propounded the discovery in question, and the trial court found that Hoge Fenton established it had been "substantially prejudiced."

Pack also cites several cases to support his contention that the trial court erred in not issuing some unspecified "lesser sanctions" or "less severe sanctions,"  As an initial matter, the question before us "is *not* whether 'less drastic alternatives' existed" to the sanctions issued by the trial court, but "whether the trial court abused its discretion by imposing the sanction it chose."  (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 37 [affirming evidentiary sanctions that precluded expert testimony], superseded by statute on another issue as stated in *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583.)  In any event, the cases on which Pack relies do not support his argument.

Pack relies heavily on *McArthur, supra,* 208 Cal.App.3d 1076, a case that is instructive and actually supports the trial court's ruling.  In *McArthur*, the Court of Appeal reversed an order for terminating sanctions, stating that the trial court should have issued evidence sanctions instead.  (*Id.* at p. 1081.)  In *McArthur*, defendants violated a court order to appear at a continuation of their depositions to answer questions about their financial condition in connection with plaintiffs' claim for punitive damages.  (*Id.* at p. 1079.)  The trial court then issued terminating sanctions, struck defendants' pleadings, permitted the entry of a default, and awarded plaintiffs even more general and compensatory damages than plaintiffs had sought in the complaint.  (*Id.* at p. 1080.)  The Court of Appeal reversed, writing that "a sanction which directs the entry of a default judgment is 'ordinarily a drastic measure which should be employed with caution.' "  (*Ibid.*, quoting *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.)  In the absence of

13

other abusive litigation conduct, and in view of the limited purpose of the discovery at issue and the "relatively minimal potential prejudice" to the plaintiffs, the Court of Appeal held that the sanctions were not "properly tailored to respond to the defendants' conduct." (*McArthur*, *supra*, 208 Cal.App.3d at pp. 1080-1081.) The trial court "should have tied the sanction to the limited purpose of the deposition," which it might have done by precluding defendants "from introducing evidence of their wealth at trial," or by "instructing the jury to assume that the defendants' financial condition would support an award of punitive damages up to the $3 million figure suggested by the [plaintiffs]." (*Id.* at p. 1081.)

Here, unlike in *McArthur*, Pack's litigation misconduct went far beyond the failure of witnesses to appear for continuation of their depositions for limited questioning. (*McArthur*, *supra*, 208 Cal.App.3d at p. 1079.) Pack failed to produce any of his experts for deposition in violation of his agreement to produce those experts (an agreement made only after Defendants had filed a motion to compel) and in violation of the trial court's order, the continuing validity of which Pack had explicitly recognized in his notice of removal. The depositions of those experts would not have been limited, but would have covered essential elements of Pack's case. Furthermore, the trial court found that Pack improperly removed the case to federal court on the eve of trial "solely for tactical reasons," including that he "was not prepared to produce his experts." In light of those findings, the trial court issued an evidence sanction that was tailored to address Pack's misconduct: because Pack refused to present his experts for deposition, he was precluded from introducing testimony from those experts.

Pack also relies on *Trail v. Cornwell* (1984) 161 Cal.App.3d 477, which is inapposite. In *Trail*, the Court of Appeal remanded the case "for reconsideration of a proper sanction for appellant's wilful refusal to attend a single deposition," after the trial court issued terminating sanctions. (*Id.* at p. 489.) In *Trail*, the trial court's error was issuing discovery sanctions under the Code of Civil Procedure when the statutory prerequisites for the sanctions order had not been met. (*Id.* at pp. 485-486.) Here, there

14

is no question that the trial court complied with the statutory requirements before issuing the order.

In summary, the trial court's sanctions order here excluded testimony from Pack's experts after Pack had willfully violated the trial court's order to produce them for deposition; the order did not strike any pleadings, dismiss the action, or render a default, and it did not prevent Pack from proceeding to trial on his claims. Accordingly, the order imposed an evidence sanction, as authorized by section 2023.030, subdivision (c), and not a terminating sanction as authorized by subdivision (d). The sanctions were tailored to address Pack's discovery misuse: as the trial court noted, if Pack had been permitted to belatedly produce the experts he had refused to produce in August 2012, despite his own agreement and a court order, he would have unfairly benefitted from his misconduct.

c.      *Cases Cited by the Trial Court*

Pack contends that the cases cited by the trial court in its sanctions order "do not support the sanctions issued."

Pack argues that *Haber Oil Co., Inc. v. Stanley Swabbing and Well Service, Inc.*, (Tex.Ct.App. 1987) 741 S.W.2d 611, is inapposite because the sanctions in that case were issued in response to violation of an order to produce documents at a deposition, rather than in response to failure to produce a witness at deposition. Pack also notes that the case does not bind a California court. But the trial court cited *Haber Oil* for the uncontroversial proposition, admitted by Pack in his notice of removal, that the removal of a case to federal court does not affect the state court's previously issued orders, including discovery orders. Pack himself made that point in his separate notice of removal, citing *Jenkins*, a Ninth Circuit case, to support it. (*Jenkins*, *supra*, 95 F.3d at p. 795.) Pack's argument regarding *Haber Oil* thus lacks merit.

Pack also objects to the trial court's citation of *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 758 (*Slesinger*), which the trial court referenced as citing *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272 (*Peat*). Pack claims that the two cases "applied terminating sanctions for far more

15

egregious conduct that substantially impaired the opposing party's ability to present its case (as opposed to the mere delay of discovery presented here)."

We reject Pack's argument regarding these cases for two reasons. First, the cases were not material to the trial court's ruling: the minutes reflect that the trial court granted Hoge Fenton's motion for sanctions without reference to these cases. The case references were added to the proposed order submitted by Hoge Fenton, who had received permission from the court to add evidentiary and case citations to the tentative order. Second, the cited portion of *Slesinger* simply stands for the uncontroversial proposition that "California courts have inherent authority to impose *evidentiary sanctions* as a remedy for litigation misconduct," and cites *Peat* as supporting authority. (*Slesinger*, *supra*, 155 Cal.App.4th at p. 758, citing *Peat*, *supra*, 200 Cal.App.3d at pp. 286-291.)

In sum, we hold that the trial court did not abuse its discretion in issuing its sanctions order.

B.      *The Trial Court's Order Denying Pack's Motion for a New Trial*

        1.      *Applicable Law*

A motion for a new trial must be based on statutory grounds. (*Fomco, Inc. v. Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166.) The principal grounds for new trial are set forth in section 657; at issue here is section 657, subdivision (1), which provides that a new trial may be granted when there has been "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."

We review a trial court's denial of a motion for new trial for abuse of discretion. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872.) In reviewing an order denying a new trial, "we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial." (*Id.* at p. 872.)

        2.      *Analysis*

Pack appeals the denial of his new trial motion on just one ground: he is entitled to a new trial because the "positive misconduct" of his trial counsel, Robinson,

16

"obliterate[d] the attorney-client-relationship" and prevented him from having a fair trial. He concludes that because Robinson's conduct prevented him from having a fair trial, the trial was "irregular" under section 657, subdivision (1).

Hoge Fenton argues that Pack's argument is waived because it was not raised in the trial court. (See *Estate of Westerman* (1968) 68 Cal.2d 267, 279 ["issues not raised in the trial court cannot be raised for the first time on appeal"].) Hoge Fenton may be correct. On appeal, Pack argues that there was essentially no attorney-client relationship at all between him and Robinson. In the trial court, however, Pack argued that Robinson was "incompeten[t] and negligen[t]," and that Robinson had deceived Pack and the trial court. In the trial court, Pack did not argue that the attorney-client relationship had been "obliterated," nor did he cite the cases on which he now primarily relies for this theory. This is not surprising given that these cases, which we will discuss below, were not even decided in the context of motions for new trial under section 657.

Even if we consider Pack's argument here, it lacks merit. We start, however, with the argument Pack made below. Pack contended that Robinson was incompetent and negligent. The trial court agreed, finding that Robinson's misconduct constituted "professional negligence," and that Pack's grievances against Robinson are indistinguishable from circumstances giving rise to allegations of attorney malpractice. It is well established that the incompetence of a party's own counsel in a civil case is not a basis for granting the party a new trial based on irregularity in the proceedings. (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 154-155 [discussing cases and concluding it is "clear that the negligence of trial counsel is not a ground upon which a new trial may be granted"]; *Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978 [no authority permits "a . . . court to grant a retrial to an unsuccessful litigant in a civil case . . . on the grounds of incompetency of counsel"].) On this basis, the trial court correctly denied the motion for a new trial to the extent plaintiff sought relief for Robinson's conduct.

Pack's new argument on appeal, that the trial court erred in denying the new trial motion because his attorney-client relationship with Robinson was "obliterated," rests on

17

inapplicable cases and on a factual predicate—the abandonment of a client by his counsel—that is not supported by the record.

Pack cites *Freedman v. Pacific Gas & Electric Co.* (1987) 196 Cal.App.3d 696, 705 (*Freedman*) for the principle that if attorney conduct "obliterates" the attorney-client relationship, there is an exception to the general rule that an attorney's inexcusable neglect is chargeable to the client. In *Freedman*, however, the issue was not a motion for new trial under section 657: rather, the trial court had dismissed plaintiffs' case under section 583.410 for inexcusable delay in moving the case to trial. (*Id.* at p. 702.) Moreover, *Freedman* recognized that the exception to the general rule was narrow and required a finding that the attorney "fail[ed] to represent [the client] and thus de facto substitute[d] out of the case." (*Id.* at p. 706.) The Court of Appeal affirmed the dismissal, concluding that the plaintiffs "should be charged with [their counsel's] delay in moving the case to trial." (*Id.* at pp. 704, 708.) The attorney in *Freedman* procrastinated and delayed, but continued to represent his clients. (*Id.* at p. 707.)

In deciding *Freedman*, the Court of Appeal looked for guidance to the law governing relief from default under section 473 (*Freedman*, *supra*, 196 Cal.App.3d at pp. 704-705), and analyzed our Supreme Court's decision in *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892 (*Carroll*), superseded by statute as stated in *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1604.[9]

In *Carroll*, plaintiff's case had been dismissed because plaintiff's counsel did not comply with orders to produce documents and failed to appear at hearings. (*Carroll*, *supra*, 32 Cal.3d at pp. 895-896.) Subsequently, the trial court vacated the judgment of dismissal pursuant to section 473. It found that plaintiff's counsel had been " 'grossly negligent' " and set aside the dismissal "because it felt that [the] penalty had been inappropriately harsh." (*Id.* at p. 897.) The Supreme Court reversed, relying on the "general rule [that] an attorney's inexcusable neglect is chargeable to the client" (*id.* at p.

---

[9] When *Freedman* was decided, the grounds for relief from default under section 473 were generally applicable in dismissal-for-delay cases, under section 583.410. (*Tustin Plaza Partnership v. Wehage* (1994) 27 Cal.App.4th 1557, 1564.)

18

895) and noting that "[t]he client's redress for inexcusable neglect by counsel is, of course, an action for malpractice." (*Id.* at p. 898.) The Supreme Court acknowledged that a narrow exception to the general rule had developed, limited to instances "where the attorney's neglect is of that extreme degree amounting to *positive misconduct*, and the person seeking relief is relatively free from negligence." (*Ibid.*) An attorney's conduct amounts to positive misconduct when the party is " 'effectually and unknowingly deprived of representation' " (*id.* at p. 899), which occurs when an attorney "de facto substitute[s] himself out of the case" resulting in "abandonment of the client" which " 'obliterate[s] the existence of the attorney-client relationship.' " (*Id.* at p. 900.) In *Carroll*, the exception did not apply because plaintiff's attorney continued to represent the client throughout the proceeding, and there was no abandonment, even though the attorney "grossly mishandled" a discovery matter. (*Ibid.*)

*Freedman* and *Carroll*, like other cases cited by Pack, were not about new trial motions. Pack cites no authority to support an argument that standards for relief from dismissal for delay or relief under section 473 should apply to a motion for a new trial under section 657, subdivision (1).

In any event, just as the facts in *Freedman* and *Carroll* did not support a finding of abandonment, the facts here do not support such a finding. Clearly Robinson did not abandon Pack: he filed papers in Pack's case and made court appearances. He communicated with Pack about experts and about removal to federal court; he opposed Hoge Fenton's motion to compel; he removed the case to federal court; he opposed Hoge Fenton's motion for evidence sanctions; he represented Pack at trial, gave an opening statement at trial, and argued against the motion for nonsuit. Because Robinson's alleged conduct did not "obliterate[] the existence of the attorney-client relationship," we need not consider whether Pack himself "is relatively free from negligence." (*Carroll*, *supra*, 32 Cal.3d at p. 898.)

Pack cites just one case that was decided under section 657, subdivision (1), *Russell v. Dopp* (1995) 36 Cal.App.4th 765. In *Russell*, defense counsel "committed a fraud on the court, the plaintiffs and the defendants" by representing defendants through

19

trial when he was not licensed to practice law. (*Id.* at p. 780.) The trial court did not learn that defendants were represented by an unlicensed attorney until jury deliberations. (*Id.* at pp. 769-771.) After the jury returned a verdict for plaintiffs, defendants moved for a new trial. (*Id.* at p. 772.) The court in *Russell* focused on the issue of unlicensed representation, relying on the rule "that an unlicensed person cannot appear in court for another person, and that the resulting judgment is a nullity." (*Id.* at p. 775.) *Russell* held there was an irregularity in the proceedings under section 657, subdivision 1, because representation by unlicensed counsel prevented defendants from having a fair trial. (*Id.* at p. 780.) On the facts of *Russell*, the grant of a new trial "would protect defendants from representation by unlicensed persons" and "uphold the integrity of the judicial process, an integrity which was clearly compromised by the unlicensed representation." (*Ibid.*) There are no such considerations here, where Robinson was licensed to practice law. As the trial court correctly concluded in denying Pack's motion for a new trial, "a trial in which counsel is not licensed to practice law is not analogous to [a] trial in which counsel fails to obtain expert testimony to support his client's case."

Because we find that there was no irregularity in the proceedings to justify a new trial under section 657, subdivision 1, we do not reach the question whether any irregularity was prejudicial.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

20

_____

Miller, J.

We concur:


_____

Richman, Acting P.J.


_____

Stewart, J.

21